UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:06-00110 |
| v. | ) | JUDGE ECHOLS |
| | ) | |
| HAROLD GREGORY | ) | |

## MEMORANDUM

Pending before the Court is Defendant Harold Gregory's Motion to Suppress (Docket Entry No. 17), to which the Government responded in opposition. The Court held a suppression hearing on October 12, 2007.

## I. FINDINGS OF FACT

On the night of January 8, 2006, police officer Phouthasone Phantakou of the Metropolitan Nashville Police Department was patrolling in his police vehicle in the area of 26th Avenue North in Nashville. The location is known as a high crime area due primarily to drug activity. Officer Phantakou was familiar with the area because he normally patrolled there.

While on patrol Officer Phantakou received a call from the dispatcher directing him to proceed to an address to investigate information from a citizen caller that a silver Toyota and another unknown car had been slowly driving by her home repeatedly that day. The dispatcher also stated that the caller indicated there had been a recent shooting in the area.

Officer Phantakou proceeded to the address given to him by the dispatcher and pulled into the driveway. The complainant, Marie Beasley, came out of the house and told Officer Phantakou that two vehicles had been driving by very slowly several times on her street and she was concerned for her own safety because there had been a shooting recently. She did not provide any information

1

about the Defendant or who might own the cars that were being driven suspiciously, nor did she explain when the shooting occurred. Officer Phantakou intended to ask Ms. Beasley to describe in more detail the two cars she had seen and to provide additional information about the recent shooting, but he was interrupted. They had been talking approximately one minute or less, however, when a red four-door Ford Focus drove by the house slowly. Ms. Beasley lifted her finger, pointed to the vehicle, and said, "That's the vehicle right there that's been driving around." Officer Phantakou returned to his vehicle and followed the Ford Focus two blocks down the street where he activated his blue lights and pulled the car over on Clifton near 20th Street.

Because of oncoming traffic, the angle at which his police vehicle was parked, and his concern for his own safety, Officer Phantakou approached the stopped Ford Focus on the sidewalk adjacent to the passenger side. As he approached, Officer Phantakou noticed a female was driving and the Defendant was seated in the front passenger seat. The front passenger window lowered. Officer Phantakou could see an infant in a car seat in the back seat.

Officer Phantakou told the occupants there had been a recent shooting in the area and he asked them why they were driving around the area numerous times on "this lady's street." The Defendant did not answer him, acted very nervous and evasive, and kept looking around. Officer Phantakou asked the Defendant if he knew anybody in the area, but the Defendant did not answer, and continued to look around in a very nervous manner. In Officer Phantakou's police experience, individuals he encounters during traffic stops are usually not nervous. Officer Phantakou also noticed the Defendant was wearing a big jacket. Knowing there had been a recent shooting in the area, Officer Phantakou was concerned for his own safety because of the way the Defendant was acting, and it was nighttime in a high crime area. Therefore, Officer Phantakou asked the Defendant

2

to step out of the car.  The Defendant did so cooperatively and shut the passenger door behind him.

The driver remained seated in the Ford Focus, and Officer Phantakou does not recall anything she

may have said to him up to that point.

Officer Phantakou asked the Defendant, "Do you mind if I pat you down?"  The Defendant

agreed to a pat-down.  During the frisk of the Defendant's upper body area, Officer Phantakou felt

a hard substance over the Defendant's clothes.  Not knowing what it was, he placed the Defendant

in handcuffs to detain him.  Officer Phantakou completed his pat-down of the Defendant, but he did

not find any weapons or other items on the Defendant's body.  Officer Phantakou then asked the

Defendant, "What's this you're wearing?"  The Defendant replied that he was wearing body armor.

Officer Phantakou does not normally encounter individuals wearing body armor unless they are

police officers.  Officer Phantakou lifted the Defendant's shirt and saw that the Defendant was

wearing heavy, green military body armor that extended down to protect the lower waist area.

Officer Phantakou had not seen such body armor before.  He told the Defendant that he was being

detained and asked him to sit on the street curb.  Defendant obeyed him.  Officer Phantakou called

for backup, and Officers Cox, Atwood and Taylor arrived on the scene promptly.

Officer Phantakou returned to the Ford Focus where the front passenger window was still

down.  He shined his flashlight around the front passenger seat area and noticed the handle of a

handgun on the floorboard in plain view sticking out from under the passenger's seat.  It was

obvious to Officer Phantakou that he was looking at a pistol.  He opened the car door and recovered

a loaded revolver.  The serial number had been scratched off the gun.  Officer Phantakou asked the

driver if she knew anything "about this" and she said "no."  He asked her for her driver's license,

but he did not discuss the recent shooting with her.  The driver eventually was allowed to leave.

3

Officer Phantakou took the firearm to his police vehicle, unloaded it, placed it in an evidence bag and filled out a report. He checked with the police department to see if the gun had been stolen, but because of the obliterated serial number, he was unable to determine if the gun was stolen. These activities took about five minutes. Officer Phantakou next returned to the sidewalk curb where the Defendant was sitting under the supervision of the other officers and told the Defendant he was under arrest for gun charges. Officer Phantakou placed the Defendant in the back seat of his patrol car. Officer Phantakou took identifying information from the Defendant and asked him again why he was in the car driving around numerous times. Officer Phantakou does not recall what the Defendant said, if anything. Officer Phantakou gave the Defendant his <u>Miranda</u> rights and the Defendant stated he understood his rights. The Defendant did not make any statements about who owned the gun found under the passenger seat.

## II. CONCLUSIONS OF LAW

In <u>Terry v. Ohio</u>, 392 U.S. 1, 27 (1968), the Supreme Court held that a police officer may stop a person even in the absence of probable cause in the interest of safety. "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to [the officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." <u>Id.</u> <u>Terry</u> focused on officer safety and prevention of future crimes, but the Supreme Court has since expanded the scope of permissible stops to include those in which an officer has a reasonable, articulable suspicion that a person has been, is, or is about to be engaged in criminal activity. <u>United States v. Hensley</u>, 469 U.S. 221, 227 (1985). This "broad rule adequately balances an individual's interest in personal security with the government's interest in preventing ongoing or future criminal activity,

4

solving past crimes, and bringing offenders to justice." United States v. Atchley, 474 F.3d 840, 848 (6th Cir. 2007) (discussing Hensley). The Court must consider the totality of the circumstances to determine whether the officer had a reasonable suspicion to justify an investigative detention. United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Caruthers, 458 F.3d 459, 464 (6th Cir. 2006).

While on patrol at night in a high crime area, Officer Phantakou received a call from the police dispatcher directing him to investigate a complaint of a citizen that two cars--a silver Toyota and an undescribed make and model--had been driving slowly past her residence several times that day. The citizen caller to the dispatcher reported that a shooting had recently occurred and gave her address. Officer Phantakou responded to the call and met with the citizen in the driveway of her home. Confirming what Officer Phantakou had heard from the dispatcher, the citizen repeated to him that two vehicles had driven by her home slowly numerous times and she was concerned for her own safety because of a recent shooting. Before Office Phantakou had a chance to ask the citizen additional questions about the cars or the shooting, a red Ford Focus drove slowly past the property. The citizen pointed to the car and identified it as one of the cars that had made previous slow passes by her residence. Based on the citizen's identification of the car, and Officer Phantakou's own observation of the car's slow progression down the street, Officer Phantakou followed the Ford Focus in his police cruiser for two blocks and stopped it.

Defendant Gregory contends that Officer Phantakou's stop of the Ford Focus was not reasonable given that he did not observe the driver of the car violate any traffic law and he was not aware of any illegal activity in which the car's occupants may have engaged. Officer Phantakou's decision to stop the car must be understood in the context of the environment in which the situation

5

occurred in light of Officer Phantakou's training and experience. Officer Phantakou routinely worked in the area. He knew the police department received numerous calls about crimes committed in the area, and he knew that many of the calls concerned shootings and drug activity. See United States v. Couch, 367 F.3d 557, 561 (6th Cir. 2004) (noting link between drug trafficking crimes and firearms). The citizen told him directly that a shooting had recently occurred, and she was concerned about her safety. That is the reason she called the police to come help her. While Officer Phantakou did not know the precise details concerning the shooting, his training and experience reasonably could have led him to conclude that a retaliatory drive-by shooting in a high crime neighborhood was entirely possible and feared by the complaining citizen. See Caruthers, 458 F.3d at 467 (noting activity in high crime area at night without more does not give rise to reasonable suspicion, but is nonetheless relevant to reasonable suspicion calculus). A police officer may form an articulable and objectively reasonable suspicion that one or more individuals who may be plotting a drive-by shooting are potentially armed and dangerous. United States v. O'Neill, 27 F.Supp.2d 1121, 1141 (E.D. Wis. 1998). A police officer "need not wait until guns are raised and bullets are flying to intervene" by making an investigatory Terry stop. Id. The Court concludes that Officer Phantakou had a particularized and objective basis for suspecting that the individuals seen driving slowly past the citizen's house repeatedly in the Ford Focus may have been, were, or were about to be engaged in criminal activity. See Hensley, 469 U.S. at 227.

Once the Ford Focus responded to Officer Phantakou's blue lights and stopped on the side of the road, Officer Phantakou approached the car on the passenger side. The Court accepts and credits the officer's testimony that he approached on the passenger side because of the traffic pattern at that location, the angle at which his police vehicle was parked, and his concern that an oncoming

6

car not strike him as he approached the Ford Focus. While there was no direct testimony on the point, the Court notes it also may have been intuitive on Officer Phantakou's part to approach the passenger side of the car because of the likelihood that any individual planning to commit a drive-by shooting would be sitting on that side of the car. See e.g. Alcala v. McGrath, 2007 WL 2152907 at *1 (N.D. Cal. July 24, 2007) (gunshots fired from front passenger side of Monte Carlo in gang retaliatory shooting); Leonor v. Houston, 2007 WL 2003413 at *4 (D.Neb. July 5, 2007) (rival gang member fired gunshots while hanging out passenger-side window); Burt v. Berghuis, 2007 WL 2791106 at *2 (W.D. Mich. June 13, 2007) (gang members drove by group, including victim, at least two times; defendant then positioned himself outside the car by sitting on the passenger-side door window; and defendant's best friend drove car by group again so defendant could fire two handguns); Ephraim v. Zimmerman, 2007 WL 804271 at *1 (N.D. Ill. Mar. 14, 2007) (assailant fired shots from passenger window); Phaymany v. Taylor, 2007 WL 174147 at *7 (S.D. Cal. Jan. 9, 2007) (in gang dispute car drove by slowly to assess situation then on second pass assailant sat on passenger side window ledge to shoot at rival gang members); Like v. Dormire, 2006 WL 3545460 at *4 (E.D. Mo. Nov. 15, 2006) (drive-by shooting accomplished from passenger window); Young v. McGrath, 2006 WL 2585514 at *1 (E.D. Cal. Sept. 8, 2006) (gunfire from passenger side).

Upon approaching the lowered passenger side window, Officer Phantakou wasted no time getting directly to the point. He asked the Defendant, who was sitting in the front passenger seat, why he was repeatedly driving slowly down the street in front of the reporting citizen's house. When the Defendant looked around nervously and did not answer his first question, Officer Phantakou asked if the Defendant knew anyone in the vicinity. The Defendant again did not respond verbally to this question and continued to appear nervous and avoided a direct response. While the

Defendant could decline to answer Officer Phantakou's questions, see Florida v. Royer, 460 U.S. 491, 497-498 (1983), Officer Phantakou was entitled to consider the Defendant's non-verbal response to his presence at the car window. The Defendant was very nervous and evasive and he kept looking around. See Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (evasive behavior is pertinent factor in determining reasonable suspicion). Officer Phantakou thought this was peculiar behavior in light of his law enforcement experience. While there is no evidence that the Defendant moved in a way to suggest he was reaching for a weapon, the Defendant was wearing a large jacket which could have concealed a weapon that in a moment could have been turned on Officer Phantakou. A police officer "need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [officer under] the circumstances would be warranted in the belief that his safety and that of others was in danger. Terry, 392 U.S. at 27. Officer Phantakou knew that he was standing in a vulnerable position at the passenger window alone in the dark, and he also knew that a driver and an infant were sitting in the car in the event he were fired upon and forced to return gunfire. The Court concludes that a reasonably prudent officer under these circumstances would be warranted in the belief that his safety and that of others was in danger.

In a reasonable reaction to the Defendant's demeanor, in light of all the circumstances then known to him, Officer Phantakou asked the Defendant to step out of the car, which the Defendant willingly did, see Maryland v. Wilson, 519 U.S. 408 (1997), and further asked the Defendant, whom he suspected to be armed and dangerous, to agree to a pat-down search, to which the Defendant gave his consent. See Schneckloth v. Bustamonte, 412 U.S. 218 (1973); Terry, 392 U.S. at 24; United States v. Graham, 483 F.3d 431, 439 (6th Cir. 2007). Reaching to frisk the Defendant's upper body, Officer Phantakou felt a hard substance against the Defendant's clothes. Not knowing what it was,

8

he placed the Defendant in handcuffs as a safety precaution. See United States v. Odoms, 2006 WL 3484025 at *2 (E.D. Tenn. Nov. 30, 2006) (approving placement of defendant in handcuffs during Terry stop where officer testified that during pat down he felt straps of bullet resistant vest on defendant's body, which indicated defendant might be dangerous). Placing an individual in handcuffs while detained does not exceed the scope of a Terry frisk. Atchley, 474 F.3d at 849; Houston v. Does, 174 F.3d 809, 814 (6th Cir. 1999). When Officer Phantakou asked the Defendant to identify the hard substance he felt under the Defendant's jacket, the Defendant admitted he was wearing body armor. See United States v. Deloney, 114 F.3d 1189, 1997 WL 251919 at * 1 (6th Cir. 1997) (unpublished) (affirming denial of motion to suppress where pat down revealed defendant was wearing bullet-proof vest and defendant was handcuffed and told to sit on nearby sidewalk); United States v. Brown, 232 F.3d 589, 591 (7th Cir. 2000) (upholding protective pat down search, arrest and search of car where pat down revealed defendant was wearing bullet-proof vest); United States v. Rickus, 737 F.2d 360, 363 (3rd Cir. 1984) (reversing suppression order where defendants were wearing full upper body bullet-proof vests and admitted they were going to "hit" a drug dealer, but the deal "had gone sour"); United States v. Hampton, 2007 WL 1139586 at *1-2 (W.D. Pa. April 12, 2007) (denying motion to suppress where Terry frisk revealed front seat passenger was wearing bullet-proof vest). Officer Phantakou's action in lifting the Defendant's shirt to look at the body armor the Defendant was wearing did not exceed the scope of a Terry frisk. See United States v. Reyes, 349 F.3d 219, 225(5th Cir. 2003).

Officer Phantakou's viewing of the body armor the Defendant was wearing, added to the other important circumstances (defendant's position as front seat passenger in a car that passed slowly by a concerned citizen's home numerous times following an earlier shooting; defendant's

9

evasive and nervous behavior upon being questioned about his conduct by Officer Phantakou; the stop occurred in darkness; and the driver was still in the car with an infant) justified the officer's decision to shine his flashlight into the front passenger side of the car to check for firearms. A police officer may search the passenger compartment of a vehicle, limited to those areas in which a weapon may be hidden, if the officer possesses a reasonable belief based on specific and articulable facts, which taken with other rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and may gain immediate control of a weapon. Michigan v. Long, 463 U.S. 1032, 1049 (1983); Graham, 483 F.3d at 439-440. Such a limited protective search is certainly permissible where the Long requirements are met and the suspect is wearing a bullet-proof vest. See Deloney, 1997 WL 251919 at *2 (holding search of passenger compartment was proper protective search where defendant was wearing bullet-proof vest and officer knew defendant claimed to carry firearm); United States v. Jones, 2000 WL 1585256 at *4 (D. Conn. Sept. 5, 2000) (defendants' wearing of body armor and possession of magazines, coupled with other suspicious behavior, justified officer in searching car for weapons). See also United States v. Young, 68 Fed.Appx. 744, 745 (8th Cir. 2003) (upholding admission into evidence of bullet-proof vest and ammunition because they were probative of defendant's possession of firearms).

Upon looking down to the floorboard on the passenger side of the car, Officer Phantakou spied the butt of a handgun jutting out in plain view from under the seat where the Defendant had been riding. Officer Phantakou realized immediately that he had spotted a firearm. He opened the passenger door and retrieved the pistol. Possession of a firearm is not illegal *per se*, but "even if a loaded handgun is legally possessed, because of its inherently dangerous nature, police may seize it if there are articulable facts demonstrating that it poses a danger." Atchley, 474 F.3d at 850; Graham, 483 F.3d at 439-440 (observing officer could lawfully conduct protective search of car where officer possessed a reasonable suspicion that suspect was armed and dangerous). See also

10

Minnesota v. Dickerson, 508 U.S. 366 (1993); Horton v. California, 496 U.S. 128 (1990). Upon examining the gun, Officer Phantakou found that it was loaded and the serial number was obliterated. He placed the Defendant under arrest on gun charges and read the Miranda rights to the Defendant. The Defendant stated that he understood his rights, but did not make any statements that Officer Phantakou could recall.

### III. CONCLUSION

From receiving the police dispatcher's call to placing Defendant Gregory in the back seat of the police car, Officer Phantakou acted lawfully throughout his investigation and his encounter with the Defendant. For all of the reasons stated, Defendant Harold Gregory's Motion to Suppress (Docket Entry No. 17) will be denied.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE